JS 44 (Rev. 11/04)    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
DOMINIC ANTENUCCI, NICOLE ANTENUCCI,
LORI PARKER & CLINTON SHIPPEN

**DEFENDANTS**
O'Neill Properties Group, Merion Construction, Inc., L21
Construction Managers, Cavan Construction, Bozutto Corporation

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Montgomery, PA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Arnold Levin, Charles E. Schaffer, Daniel C. Levin, LEVIN, FISHBEIN,
SEDRAN & BERMAN, 510 Walnut Street, Ste. 500, Philadelphia, PA 19106
(215) 592-1500

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | | | |
|---|---|---|---|
| ❏ 1 | U.S. Government Plaintiff | ❏ 3 | Federal Question (U.S. Government Not a Party) |
| ❏ 2 | U.S. Government Defendant | x 4 | Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | x 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | x 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 610 Agriculture | ❏ 422 Appeal 28 USC 158 | ❏ 400 State Reapportionment |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 362 Personal Injury - Med. Malpractice | ❏ 620 Other Food & Drug | ❏ 423 Withdrawal 28 USC 157 | ❏ 410 Antitrust |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 365 Personal Injury - Product Liability | ❏ 625 Drug Related Seizure of Property 21 USC 881 | | ❏ 430 Banks and Banking |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | ❏ 368 Asbestos Personal Injury Product Liability | ❏ 630 Liquor Laws | **PROPERTY RIGHTS** | ❏ 450 Commerce |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | | ❏ 640 R.R. & Truck | ❏ 820 Copyrights | ❏ 460 Deportation |
| ❏ 151 Medicare Act | ❏ 340 Marine | **PERSONAL** | ❏ 650 Airline Regs. | ❏ 830 Patent | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ❏ 345 Marine Product Liability | ❏ 370 Other Fraud | ❏ 660 Occupational Safety/Health | ❏ 840 Trademark | ❏ 480 Consumer Credit |
| | ❏ 350 Motor Vehicle | ❏ 371 Truth in Lending | ❏ 690 Other | | ❏ 490 Cable/Sat TV |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 355 Motor Vehicle Product Liability | x 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ❏ 810 Selective Service |
| ❏ 160 Stockholders' Suits | ❏ 360 Other Personal Injury | ❏ 385 Property Damage Product Liability | ❏ 710 Fair Labor Standards Act | ❏ 861 HIA (1395ff) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 190 Other Contract | | | ❏ 720 Labor/Mgmt. Relations | ❏ 862 Black Lung (923) | ❏ 875 Customer Challenge 12 USC 3410 |
| ❏ 195 Contract Product Liability | | | ❏ 730 Labor/Mgmt.Reporting & Disclosure Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | | ❏ 740 Railway Labor Act | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER** | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 892 Economic Stabilization Act |
| ❏ 210 Land Condemnation | ❏ 441 Voting | ❏ 510 Motions to Vacate Sentence | ❏ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ❏ 442 Employment | **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 894 Energy Allocation Act |
| ❏ 230 Rent Lease & Ejectment | ❏ 443 Housing/ Accommodations | ❏ 530 General | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 895 Freedom of Information Act |
| ❏ 240 Torts to Land | ❏ 444 Welfare | ❏ 535 Death Penalty | | | ❏ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 540 Mandamus & Other | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | ❏ 550 Civil Rights | | | |
| | ❏ 440 Other Civil Rights | ❏ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

| | | | | | Appeal to District |
|---|---|---|---|---|---|
| x 1 Original Proceeding | ❏ 2 Removed from State Court | ❏ 3 Remanded from Appellate Court | ❏ 4 Reinstated or Reopened | ❏ 5 Transferred from another district (specify) | ❏ 6 Multidistrict Litigation   ❏ 7 Judge from Magistrate Judgment |

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332(a)(1)
Brief description of cause:
Class Action for tenants of apartment complex destroyed/damaged by fire.

**VII. REQUESTED IN COMPLAINT:**
x CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
In excess of $5,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND: x Yes   ❏ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 8/29/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DOMINIC ANTENUCCI<br>5745 Friars Road #87<br>San Diego, CA 92110 | : | COMPLAINT-CLASS ACTION<br>AND JURY TRIAL DEMANDED |
| | : | |
| and | : | |
| | : | CIVIL ACTION |
| NICOLE ANTENUCCI<br>309 Washington Street, Apt. 1215<br>Conshohocken, PA 19428 | : | NO. |
| | : | |
| and | : | |
| | : | |
| LORI PARKER<br>309 Washington Street, Apt. 1409<br>Conshohocken, PA 19428 | : | |
| | : | |
| and | : | |
| | : | |
| CLINTON SHIPPEN<br>309 Washington Street, Apt. 1409<br>Conshohocken, PA 19428 | : | |
| | : | |
| Plaintiffs,<br>v. | : | |
| | : | |
| O'NEILL PROPERTIES GROUP<br>2701 Renaissance Boulevard<br>King of Prussia, PA 19406 | : | |
| | : | |
| and | : | |
| | : | |
| MERION CONSTRUCTION, INC.<br>2701 Renaissance Boulevard<br>King of Prussia, PA 19406 | : | |
| | : | |
| and | : | |
| | : | |
| L21 CONSTRUCTION MANAGERS<br>2916 Leiscz Bridge Road<br>Lesport, PA 19533 | : | |

1

and                          :
                             :
CAVAN CONSTRUCTION          :
274 Bodley Road             :
Aston, PA 19104             :
    and                     :
                             :
BOZUTO CORPORATION          :
7850 Walker Drive, Suite 400 :
Greenbelt, MD 20770         :
                Defendants  :
                             :

## COMPLAINT-CLASS ACTION

Plaintiffs, Dominic Antenucci, Nicole Antenucci, Lori Parker and Clinton Shippen ("Plaintiffs"), tenants at the Riverwalk at Millennium Apartment Complex ("Riverwalk at Millennium"), by and through their counsel listed below, hereby bring a class action and demand a jury trial, on behalf of themselves and all similarly situated individuals and entities, to redress the harm that they and the members of the Class described herein have suffered and continue to suffer as result of a fire on August 13, 2008 at Riverwalk at Millennium Apartments in Conshohocken, Pennsylvania.  For their Complaint, plaintiffs allege as follows:

## I.    SUMMARY OF CLAIMS

1.      This is a class action suit for negligence, negligence per se and nuisance (both public and private) brought by the representative plaintiffs, Dominic Antenucci, Nicole Antenucci, Lori Parker and Clinton Shippen on behalf of themselves and all other similarly situated persons and entities who were harmed as a result of the fire that burned at the Riverwalk at Millennium Apartments beginning on August 13, 2008.

2.      The suit seeks to recover damages for, among other things, uninsured, underinsured, unreimbursed and subrogable losses resulting from the fire, and attendant efforts to

2

control and suppress the fire, which losses were suffered and continue to be suffered by various persons and entities who leased, owned or occupied apartments, condominiums, space or property in or about Riverwalk at Millennium, and whose businesses, residences, inventory and property were located in the Riverwalk at Millennium, or in close proximity to the Riverwalk at Millennium and the fire.

3.     Plaintiffs therefore bring the common law causes of action to recover damages from O'Neill Properties Group ("O'Neill"), Merion Construction, Inc. ("Merion"), L21 Construction ("L21"), Cavan Construction ("Cavan") and Bozutto Corporation ("Bozutto"), who were at all material times hereto the owners, managing agents and/or operators of the Riverwalk at Millennium and/or the Stables at Millennium which was under construction ("Stables project"), and who have been responsible for the design, construction, management, maintenance and upkeep of the Riverwalk at Millennium and the Stables project as more particularly set forth herein.

## II.     JURISDICTION AND VENUE

4.     Plaintiffs bring this action pursuant to Pennsylvania common law.

5.     This Court has jurisdiction over O'Neill, Merion, L21 and Cavan because each of these entities is a corporation regulated under the laws of the Commonwealth of Pennsylvania and does sufficient business in, has sufficient minimum contacts with, or otherwise intentionally avails itself of the markets of, the Commonwealth of Pennsylvania through its business operations in Pennsylvania.

6.     This Court has jurisdiction over Bozutto because, at material times hereto, it has been a corporation doing business in Pennsylvania that was regulated under the laws of the Commonwealth of Pennsylvania and did sufficient business in, has sufficient minimum contacts

3

with, or otherwise intentionally avails itself of the markets of, the Commonwealth of Pennsylvania through its business operations in Pennsylvania.

7.     Pursuant to 28 U.S.C. § 1332, venue and jurisdiction is proper in this Court. Members of the class and defendants are residents of different states.  The damages exceed $5,000,000.00.

## III.    THE PARTIES

8.     Plaintiff Dominic Antenucci is an adult individual temporarily residing at the Naval Justice School, 360 Elliot Street, Newport, Rhode Island 02841 and is still domiciled in California.  Plaintiff Nicole Antenucci is an adult individual and resident of Pennsylvania.  Both plaintiffs, Dominic and Nicole Antenucci resided at the Riverwalk at Millennium Apartments, Apartment 1215, in Conshohocken, Pennsylvania.  As a result of the defendants' negligent, reckless and careless conduct which caused the catastrophic fire at the Riverwalk at Millennium apartments on August 13, 2008, plaintiffs Dominic Antenucci and Nicole Antenucci suffered losses of, and damage to, their personal property.  In addition, plaintiffs were forced to spend monies for emergency expenses included but not limited to food, alternative living arrangements, clothing, medical and other expenses for activities of daily living.  Plaintiffs also incurred medical bills in relation to treatment of their two cats.

9.     Plaintiff, Lori Parker is an adult individual and resident of Pennsylvania who resided at Riverwalk at Millennium Apartments, Apartment 1409, Conshohocken, Pennsylvania. As a result of the defendants' negligent, reckless and careless conduct which caused the catastrophic fire at the Riverwalk at Millennium Apartments on August 13, 2008, plaintiff Lori Parker suffered losses of and damage to, her personal property.  In addition, plaintiff was forced

4

to spend monies for emergency expenses included but not limited to food, alternative living arrangements, clothing, medical and other expenses for activities of daily living.

10.     Plaintiff, Clinton Shippen is an adult individual and resident of Pennsylvania who resided at Riverwalk at Millennium Apartments, Apartment 1409, Conshohocken, Pennsylvania. As a result of the defendants' negligent, reckless and careless conduct which caused the catastrophic fire at the Riverwalk at Millennium Apartments on August 13, 2008, plaintiff Clinton Shippen suffered losses of and damage to, his personal property.  In addition, plaintiff was forced to spend monies for emergency expenses included but not limited to food, alternative living arrangements, clothing, medical and other expenses for activities of daily living.

11.     Defendant O'Neill is a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania with its principal place of business located at 2701 Renaissance Boulevard, King of Prussia, PA 19406.

12.     Defendant Merion is a corporation organized and existing and by virtue of the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 2701 Renaissance Boulevard, King of Prussia, PA 19406.

13.     Defendant L21 is a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 2916 Leisez Bridge Road, Leesport, Pennsylvania and which, at all times relevant herein, engaged in business within the Commonwealth of Pennsylvania, and County of Montgomery, on a regular, systematic, substantial and continuous basis.

14.     Defendant Cavan is a corporation organized and existing under and by the virtue of laws of the Commonwealth of Pennsylvania, with its principal place of business located at 274 Bodley Road, Aston, PA 19014 and which at all times relevant herein, engaged in the business

5

within the Commonwealth of Pennsylvania, in the County of Montgomery, on a regular, systematic, substantial and continuous basis.

15.     Defendant Bozutto is a corporation organized and existing under and by the virtue of laws of the state of Maryland with its principal place of business located at 7850 Walker Drive, Suite 400, Greenbelt, MD 20770 and with at all times relevant herein, engaged in business in the Commonwealth of Pennsylvania and County of Montgomery, on a regular, systematic, substantial and continuous basis.

## IV. CLASS ACTION ALLEGATIONS

16.     This action is brought as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons and entities who were injured by or suffered losses (as set forth more fully herein) from the fire which destroyed the Riverwalk at Millennium (the "Class").

17.     More than 100 persons or entities are members of the Class.  Beyond the representative plaintiffs, there are more than 100 other persons or entities who leased apartments or owned condominiums at the Riverwalk at Millennium, either as direct tenants of one or more defendants or as subtenants.

18.     Moreover, many automobiles owned by tenants or owners at the Riverwalk at Millennium were damaged or destroyed as a result of the fire, as were the contents therein.

19.     In addition, numerous residences and businesses located in the area immediately surrounding the Riverwalk at Millennium sustained property damage and/or loss as a result of the fire.

20.     In view of all the tenants and subtenants of the Riverwalk at Millennium who lost and suffered damages as a result of the fire, the membership of the Class is so numerous that

6

joinder of all members is impracticable.  It is believed and therefore averred that there are more than 100 members of the Class.  Class members can be identified from the registration records of Defendants.

21.    The class is so numerous that joinder of all members is impracticable.

22.    There are questions of law and fact common to the claims asserted on behalf of the Class that predominate over any questions affecting only individual members of the Class. Such common questions include:

a.    the origin and cause of the fire;

b.    the cause(s) of the spread of the fire;

c.    whether defendants failed to, among other things, properly design, construct, operate, inspect, manage, maintain and/or repair the Riverwalk at Millennium Apartments;

d.    whether defendants failed to, among other things, properly design, construct, install, inspect, operate, manage and/or maintain adequate fire detection, alarm, suppression or other appropriate fire protection systems at the Riverwalk at Millennium Apartments;

e.    whether defendants failed to, among other things, properly design, construct, operate, inspect, manage, maintain and/or repair the Stables at Millennium construction site;

f.    whether defendants failed to, among other things, properly design, construct, install, inspect, operate, manage and/or maintain adequate fire detection, alarm, suppression and/or other appropriate fire protection systems at the Stables at Millennium construction site

g.    whether defendants knew of should have known that the failure to, among other things, properly design, construct, install, inspect, operate, manage and/or maintain the Riverwalk at Millennium Apartments, and adequate fire detection, alarm, suppression or other appropriate fire protection systems at the Riverwalk at Millennium Apartments, could cause grave and extensive harm to the property and businesses of plaintiffs and the Class in the event of a fire;

h.    whether defendants knew of should have known that the failure to, among other things, properly design, construct, install, inspect, operate, manage

7

and/or maintain the Stables project, and adequate fire detection, alarm, suppression or other appropriate fire protection systems at the Stables project, could cause grave and extensive harm to the property and businesses of plaintiffs and the Class in the event of a fire;

i.   whether defendants' failure to, among other things, properly design, construct, install, inspect, operate, manage and/or maintain appropriate fire protection systems at the Riverwalk at Millennium Apartments caused, contributed and/or failed to control the catastrophic fire at the Riverwalk at Millennium on August 13, 2008;

k.   whether defendants' alleged failure to, among other things, to properly design, construct, install, inspect, operate, manage and/or maintain appropriate fire protection systems at the Stables project Apartments caused, contributed and/or failed to control the catastrophic fire on August 13, 2008;

l.   whether the catastrophic fire caused property damage and/or dangerous and hazardous conditions at the Riverwalk at Millennium Apartments and in the immediate area which resulted in, among other things, the evacuation, and displacement, of plaintiffs and class members from their residences and the obstruction and closure of public ways and streets.

m.   whether plaintiffs and members of the Class suffered harm of a kind different from that suffered by other members of the general public;

n.   whether plaintiffs and members of the Class suffered damages as a result of defendants' conduct; and

o.   whether defendants are liable to plaintiffs and the Class for the harm that they suffered;

p.   whether defendants acted outrageously or with reckless indifference to the rights of others in failing to, among other things, properly design, construct, install, inspect, operate, manage and/or maintain the Riverwalk at Millennium and adequate fire detection, alarm, suppression or other appropriate fire protection systems at the complex, thereby warranting the imposition of punitive damages;

q.   whether defendants acted outrageously or with reckless indifference to the rights of others in failing to, among other things, properly design, construct, install, inspect, operate and manage the construction of the Stables at Millennium construction project including maintaining adequate fire detection, alarm, suppression and/or other appropriate fire protection systems at the construction site, thereby warranting the imposition of punitive damages.

8

23.     Plaintiffs are members of the Class, and their claims are typical of the claims of the members of the Class in that plaintiffs have been damaged by the same conduct, as set forth more fully herein, as all of the members of the Class.  The damages suffered by plaintiffs, as set forth more fully herein, consist of the loss of and damage to their property, expenses for items such as food, clothing, alternate housing, medical bills, among other things.

24.     Plaintiffs have no interests adverse to the interests of other members of the Class.

25.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel experienced and competent in the prosecution of mass tort and class action litigation.

26.     Plaintiffs can acquire adequate financial resources to assure that the interests of the Class will not be harmed as counsel have agreed to advance the costs and expenses of the litigation contingent upon the outcome of the matter.

27.     A class action provides a fair and efficient method for the adjudication of this controversy.  Because of the size of many of the individual claims, many members of the Class cannot afford to seek legal redress individually for the wrongs complained of herein because the claims are not large enough to justify either a contingent fee or hourly legal fee arrangement, given the substantial time and expense associated with prosecuting claims of this type.  Absent a class action, therefore, members of the Class will suffer uncompensated loss. In addition, by aggregating their claims in a class action, Class members will likely receive the benefit of reduced legal expenses, such as the costs of experts, as these expenses will be shared

equally by all members of the Class.  Finally, the class action device may ensure that all Class

members will share equally out of any fund which may be created for the benefit of the Class.

28.     This action meets the requirements of FED. R. CIV. P. 23(a)-(b) because:

    a.     common questions of law and fact predominate over questions affecting
only individual Class members;

    b.     separate actions by individual members of the Class against defendants
would create a risk of inconsistent or varying adjudications for members
of the Class and of incompatible standards of conduct for defendants;

    c.     separate actions by individual members of the Class against defendants
would also be dispositive of the interests of other members not parties to
the adjudication and would substantially impair or impede their ability to
protect their interests;

    d.     separate prosecution of claims by each individual member of the Class
against defendants would create enormous difficulties and expense for
the Court, the parties and the public at large, requiring each member of
the Class to establish defendants' liability (if they could afford to do
so), would result in duplicative proceedings and unnecessary
consumption of judicial and other resources, could cause incomplete
development of the facts relevant to plaintiffs' claims, and could result
in inconsistent rulings regarding discovery and other matters.

29.     Notice of the pendency of this action can be given either by regular mail or by

publication through local news media.

## V.     FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

30.     The below-listed actions, omissions, negligent conduct, carelessness and

wrongful conduct by defendants (and potentially others) include those of defendants'

predecessors, successors, parents, subsidiaries, affiliates, officers, directors, representatives,

agents, servants, employees or other related persons, organizations or entities.

### A.  The Riverwalk at Millennium Apartment Complex

31.     The Riverwalk at Millennium Apartment Complex, 309 Washington Street, Conshohocken, PA 19428 consisted of four (4) apartment buildings housing a total of 375 apartments and a community clubhouse.

32.     The Riverwalk at Millennium was originally owned and developed by defendant O'Neill.  The construction was completed in the Spring of 2005 and defendant O'Neill announced on or around May 23, 2005 the completion and availability of 375 newly built luxury apartments at Riverwalk at Millennium. Defendant O'Neill offered 1, 2, and 2 bedroom loft apartments ranging from 684 sq. foot to 1300 sq. foot at the Riverwalk at Millennium.

33.     At all times material hereto, O'Neill was the owner, developer, managing agent and/or operator of the Riverwalk at Millennium, and has, through its agents, servants, representatives and/or employees, been responsible for the design, construction, maintenance, management and upkeep of the Riverwalk at Millennium and any renovations thereto.  Among other things, O'Neill was responsible for the management of the Riverwalk at Millennium and for its safety including, but not limited to, all fire detection, suppression and protection systems and materials.

34.     Upon information and belief, defendant O'Neill hired various professionals and/or contractors included but not limited to defendant Merion to design and construct the Riverwalk at Millennium.

35.     By September 1, 2005, defendant O'Neill had more than 100 leases signed for apartments at the Riverwalk at Millennium.

36.     Defendant Bozutto was hired to manage the Riverwalk at Millennium complex and serve as the leasing agent at some time prior to August 13, 2008.  At the time of the

catastrophic fire on August 13, 2008, Riverwalk at Millennium was managed by defendant Bozutto.  Defendant Bozutto was also the leasing agent of Riverwalk at Millennium.

37.     Defendant O'Neill, sold its interest in the Riverwalk at Millennium at some point prior to August 13, 2008.

## B.     The Stables Construction Project

38.     At some point prior to August 13, 2008, defendant O'Neill began developing an apartment complex adjacent to the Riverwalk at Millennium on Washington Street in Conshohocken, PA.  This complex was known as the Stables at Millennium.  ("Stables project").

39.     At all times material hereto, O'Neill was the owner, developer, managing agent and/or operator of the Stables at Millennium Apartment Complex under construction adjacent to the Riverwalk at Millennium project, and has, through its agents, servants, representatives and/or employees, been responsible for the design, construction, maintenance, management and upkeep of the Stables project and any renovations thereto.  Among other things, O'Neill was responsible for the management of the Stables project and for its safety including, but not limited to, all fire detection, suppression and protection systems and materials.

40.     Upon information and belief, at all times material hereto, defendant O'Neill hired defendant Merion, to serve as the construction manager and/or the general contractor for the Stables project adjacent to the Riverwalk at Millennium.  At all time material hereto, defendant Merion as the construction manager and/or general contractor for the Stables project, through its agents, servants, representatives and/or employees, was responsible for the design, construction, maintenance, management and upkeep of the Stables project and any renovations thereto. Among other things, defendant Merion was responsible for the management of the Stables

12

project and for its safety, including but not limited to, all fire detection, suppression and protection systems and materials.

41.     Upon information and belief, at all times material hereto, defendant O'Neill hired defendant L21, to serve as the construction manager and/or the general contractor for the Stables project adjacent to the Riverwalk at Millennium.  At all time material hereto, defendant L21 as the construction manager and/or general contractor for the Stables project, through its agents, servants, representatives and/or employees, was responsible for the design, construction, maintenance, management and upkeep of the Stables project and any renovations thereto. Among other things, defendant L21 was responsible for the management of the Stables project and for its safety, including but not limited to, all fire detection, suppression and protection systems and materials.

42.     Upon information and belief, defendant Merion and/or defendant L21 hired Cavan to perform construction services on the Stables project, and, defendant Cavan through its agents, servant, representatives, and/or employees was responsible for design, construction, maintenance, management and upkeep of the Stables project.  Among other things, defendant Cavan was responsible for the management of the Stables project and for its safety including, all fire detection, suppression and protection systems and materials.

43.     Upon information and belief, defendant O'Neill hired defendant Bozutto to serve as the manager and leasing agent for the Stable at Millennium apartment complex.

44.     The Stables project was wood frame construction without fire protection measures including but not limited to a functioning automatic sprinkler system at the time of the fire.

13

### C.     The Fire

45.     Upon information and belief, defendant Cavan was using acetylene torches to remove eight medal balconies from the Stables project on or around August 13, 2008.

46.     Upon information and belief, the acetylene torches or sparks or slag from the removal of the balconies ignited the fire at the Stables project on August 13, 2008.

47.     Due to the absence of any fire protection, containment and/or suppression at the Stables project, the entire wooden frame of the building burned.

48.     Before the fire was brought under control, it spread to the Riverwalk at Millennium and erupted into an 8-alarm inferno causing the apartment buildings to catch on fire resulting in catastrophic damage and leaving hundreds of residents homeless.

### D.     The Damages

49.     As a direct, immediate and proximate result of the fire and the consequent destruction of a large portion of the Riverwalk at Millennium, the fire fighting efforts and consequent spread of water and debris, and the dangerous conditions in the aftermath of the fire, the personal property of plaintiffs was physically invaded, damaged and/or destroyed.

50.     The property destroyed includes, but is not limited to furniture, furnishings, fixtures, jewelry, household items and equipment, medicine, machinery, supplies and various other equipment, materials, and property necessary for and attendant to the plaintiffs' and class members' activities of daily living.  In addition, plaintiffs' lost the value of all improvements made to their leased spaces at the Riverwalk at Millennium.

51.     In addition, plaintiffs' lives were interrupted, impeded and harmed as a direct and proximate result of the fire and fire suppression efforts, and as a result, plaintiffs were forced to incur expenses for items such as food, clothing, alternate living arrangements, medicine, medical

treatment, other items for activities of daily living, among other things. Plaintiffs' losses of property and lives continue to be interrupted, impaired and harmed in the aftermath of the fire.

52.     The property and economic damages described above, although possibly different in kind and amount, are identical in nature to the damages suffered by other members of the Class.

53.     Plaintiffs and the Class have not been fully compensated for their losses including, but not limited to, the value of property destroyed, the expense in replacing such property, the expenses incurred for food, clothing, housing, medicine, medical treatment and other expenses, and the value of time and efforts expended because of the fire.

54.     All told, the fire damaged or destroyed property located within the Riverwalk at Millennium, and/or interrupted the lives, of no less than 168 residents living in apartments within the Riverwalk at Millennium.

55.     On August 13, 2008, the Riverwalk at Millennium was declared a disaster area by the United States Small Business Administration (SBA), thereby making the tenants affected by the fire eligible for federal government assistance, such as low-interest loans.

56.     In addition to the losses suffered by residents located within the Riverwalk at Millennium, the fire and/or the attendant smoke, embers, debris and water used to fight the fire, invaded and damaged businesses and residences situated within or in close proximity to the Riverwalk at Millennium.

57.     Indeed, many businesses and homes located within several blocks of the fire were evacuated during the evening of August 13, 2008, and the owners of such businesses and homes suffered damage to their real and personal property, as well as economic losses attendant thereto.

58.     The subject fire was the direct and proximate cause of defendants' actions, omissions, negligence, carelessness and wrongful conduct, and has resulted in the following damages to plaintiffs and the members of the plaintiffs' Class:

      a.     damages to, the loss of use of, or the permanent deprivation of personal property, including, but not limited to, merchandise, furniture, furnishings, fixtures, wiring, computer and electronic equipment, computer hardware and software, telephones and office equipment and supplies, files, books, records and paper, clothing, jewelry, medicine, and other personal items, to be specifically itemized and valued, as well as any improvements or betterments made to the Riverwalk at Millennium;

      b.     expenses including, but not limited to, expenses for food, clothing, housing, relocation, transportation, medicine, medical treatment and such other items as are necessary to continue one's activities of daily living.

### E.  The Breaches of the Applicable Standards of Care

59.     The Commonwealth of Pennsylvania, Montgomery County and the Borough of Conshohocken, in order to protect the health, safety and welfare of its citizens, have enacted laws and administrative regulations setting forth the standards for fire detection, alarm, prevention, control, suppression and safety in buildings located in Pennsylvania.

60.     At all times material hereto, there also existed other legislative, administrative, industry and professional standards and/or codes relating to proper building structure practices including, but not limited to the Boca National Building Codes ("BOCA"), the National Fire Protection Association Code ("NFPA") and the Occupational Safety and Health Administration Regulations ("OSHA"), National Association of Demolition Contractor's Guidelines and Association of General Contractor's Guidelines which are purposefully created to protect, *inter alia*, the livelihood and property of citizens such as plaintiffs and the Class.

61.     Defendants owed duties to plaintiffs and the other members of the Class to act in accordance with all governing standards, including those identified hereinabove, which standards

16

are enacted, *inter alia*, to protect the livelihood and property of Pennsylvania citizens, including plaintiffs and the Class, from the hazards of fire.

62.     Upon information and belief, defendants violated one or more of these standards, and thus breached their duty to plaintiffs and the other members of the Class, by virtue of their acts and/or omissions relating to the design, construction, installation, maintenance or repair of the Stables project and Riverwalk at Millennium and the defective conditions.

63.     More specifically, defendants deliberately created, or at the very least knew or should have known of, the inadequate, insufficient, defective and/or unsafe fire detection, suppression and protection systems and materials conditions of the Stables project and the Riverwalk at Millennium Apartment Complex, including the Defective Conditions, but failed to warn or notify plaintiffs and the other members of the Class, or take corrective action, despite a duty to do so at common law and under the governing laws, regulations, ordinances, standards and/or codes.

64.     Plaintiffs believe, and therefore aver, that the fire started at the Stables project due to the Defective Conditions identified and that the fire spread faster and further to the Riverwalk at Millennium than it otherwise would have due to, *inter alia*, the Defective Conditions identified.

## COUNT I

### NAMED PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE CLASS V. O'NEILL PROPERTIES GROUP, MERION CONSTRUCTION, L21 CONSTRUCTION

65.     Named plaintiffs incorporate herein by reference all proceeding paragraphs of this complaint the same as if fully set forth herein.

66.     At all times material herein defendants, O'Neill, Merion and L21 undertook the supervision of the construction that was being undertaken at the Stables project, and in

17

connection therewith, established plans, recommendations, designs, and specifications for the performance of the construction work.

67.     Defendants O'Neill, Merion and L21 having undertaken the supervision of the construction site, owed a duty to the residents of the Riverwalk to perform the construction work in a safe and workman like manner in order to avoid damage to property or injury to persons.

68.     Defendants O'Neill, Merion and L21 knew or should have known of the risk of fire during construction and knew or should have known that the risk was increased when using wood frame construction.

69.     Defendants O'Neill, Merion and L21 by and through their separate and respective agents, servants, workmen and/or employees were careless and negligent in:

      a.    Failing to perform the construction work at the Stables project in a safe manner;

      b.    Failing to adequately inspect the construction site for hazardous conditions;

      c.    Failing to coordinate with other entities and subcontractors, including but not limited to, Cavan;

      d.    Failing to adequately plan, plot, and supervise the construction work;

      e.    Violating applicable OSHA regulations, including the sections applicable to fire prevention and control, demolition and welding;

      f.    Failing to properly train their employees;

      g.    Failing to properly train and instruct the employees of subcontractors on the construction site;

      h.    Failing to hire competent employees, safety inspectors and subcontractors;

      i.    Failing to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measurements and plans;

j.        Violating and failing to comply with federal and state statues, local ordinances and all other rules, enactments or regulations applicable or in effect, be they administrative, industry wide or otherwise pertaining to the performance of construction work;

k.        Failing to perform or furnish construction services in conformity with the standard of care in the construction industry at the time the services were supplied and furnished;

l.        Failing to adopt, enact and enforce proper work rules and procedures;

m.        Performing and furnishing construction services in a wholly inadequate and negligent manner;

n.        Failing to properly supervise the construction work;

o.        Failing to perform a safety task analysis;

p.        Failing to require or enforce a policy that required all workers to sign off on specific safety rules;

q.        Failing to implement and/or enforce an adequate fire protection plan;

r.        Failing to properly train employees and the employees of subcontractors on fire protection and fire safety;

s.        Failing to have an adequate water supply at the construction site to extinguish or contain the fire;

t.        Failing to have the necessary fire suppression equipment on the construction site to suppress or contain the fire;

u.        Failing to have an adequate system in place to alert local fire departments in the event of a fire;

v.        Failing to consider the local water supply prior to determining a safe and acceptable means of construction;

w.        Failing to have a pull alarm which would immediately signal firefighters in the event of a construction fire;

x.        Failing to have an adequate hook-up to the water supply so as to suppress and contain a construction fire;

19

y.     Violating or failing to comply with the Uniform Building Code as it relates to Fire Protection;

z.     Violating or failing to comply with Association of General Contractors Manual as it relates to fire safety and welding and cutting;

aa.     Violating and failing to comply with National Association of Demolition Contractors Manual as it is related to fire safety;

bb.     Permitting the use of acetylene torches by subcontractors in a wood frame construction project;

cc.     Failing to require a fire watch during operation which required the use of a torch in elevated positions;

dd.     Failing to require the use of welding blankets to prevent fire from igniting during operation which require the use of torches;

ee.     Failing to consider the fire protection implications of building a five story wood construction residential structure;

ff.     Failing to provide adequate hydrants for the complex;

gg.     Failing to provide adequate access to firefighters;

hh.     Failing to consider the capacity of local fire departments in the design of the fire protection system.

70.     By reason of the carelessness and negligence of the defendants, as aforesaid, named plaintiffs and the members of the Class, suffered damages to their personal property and incurred significant expense and damages as set forth in the preceding paragraphs.

WHEREFORE, named plaintiffs on behalf of themselves and the class of similar situated persons they seek to represent, claim of defendants, O'Neill, Merion and L21 a sum in excess of $5,000,000.00 in damages, exclusive of interest, costs, damages for delay, punitive damages and attorney's fees and brings this action to recover the same.

## COUNT II-NEGLIGENCE

## NAMED PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE CLASS
## V. CAVAN CONSTRUCTION

71.     Named plaintiffs incorporate herein by reference all proceeding paragraphs of this complaint the same as if fully set forth herein.

72.     At all times relevant herein defendant, Cavan undertook the supervision of the construction that was being undertaken at the Stables project, and in connection therewith, established plans, recommendations, designs and specifications for the performance of the construction work.

73.     Defendant Cavan having undertaken the supervision of the construction site owed a duty to the residents of the Riverwalk to perform the construction work in a safe and workman like manner in order to avoid damage to property or injury to persons.

74.     Defendant Cavan knew or should have known of the risk of fire during construction and knew or should have known that the risk was increased when using wood frame construction.

75.     Defendant, Cavan, by and through their separate and respective agents, servants, workmen, and/or employees was careless and negligent in:

   a.     Failing to perform the construction work at the Stables in a safe manner;

   b.     Failing to adequately inspect the construction site for hazardous conditions;

   c.     Failing to coordinate with other entities and subcontractors, including, but not limited to, O'Neill, Merion and/or 1.21;

   d.     Failing to adequately plan, plot, and supervise the construction work;

   e.     Violating applicable OSHA regulations including the sections applicable to fire prevention and control, demolition, and welding;

21

f.      Failing to properly train its employees;

g.      Failing to properly train and instruct the employees of subcontractors on the construction site;

h.      Failing to hire competent employees, safety inspectors and subcontractors;

i.      Failing to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans;

j.      Violating and failing to comply with federal and state statutes, local ordinances, and all other rules, enactments or regulations applicable or in effect, be they administrative, industry wide or otherwise pertaining to the performance of construction work;

k.      Failing to perform or furnish construction services in conformity with the standard of care in the construction industry at the time the services were supplied and furnished;

l.      Failing to adopt, enact and enforce proper work rules and procedures;

m.      Performing and furnishing constructions services in a wholly inadequate and negligent manner;

n.      Failing to properly supervise the construction work;

o.      Failing to perform a safety task analysis;

p.      Failing to require or enforce a policy that required all workers to sign off on specific safety rules;

q.      Failing to implement and/or enforce an adequate fire protection plan;

r.      Failing to properly train employees on fire prevention, fire protection and fire safety;

s.      Failing to have an adequate water supply at the construction site to extinguish or contain the fire;

t.      Failing to have the necessary fire suppression equipment on the construction site to suppress or contain the fire;

u.      Failing to have an adequate system in place to alert local fire departments in the event of a fire;

22

v.     Failing to consider the local water supply prior to determining a safe and acceptable means of construction;

w.     Failing to have a pull alarm which would immediately signal firefighters in the event of a construction fire;

x.     Failing to have an adequate hook-up to the water supply so as to suppress and contain a construction fire;

y.     Violating or failing to comply with the Uniform Building Code as it relates to Fire Protection;

z.     Violating or failing to comply with Association to General Contractors Manual as it relates to fire safety and welding and cutting;

aa.    Violating or failing o comply with National Association of Demolition Contractors Manual as it related to fire safety;

bb.    Using acetylene torches in a wood framed construction project;

cc.    Failing to require a fire watch during operations which required the use of a torch in elevated positions;

dd.    Failing to require the use of welding blankets to prevent fire from igniting during operation which require the use of torches; and

ee.    Failing to have a fire extinguisher in the immediate area to stop the spread of flames;

ff.    Failing to adhere to well accepted standards relating to safe welding and cutting.

76.     By reason of the carelessness and negligent of the Defendants, as aforesaid, named Plaintiffs, and the members of the Class, suffered damage to their personal property and incurred significant expense and damages as set forth in the preceding paragraphs.

WHEREFORE, named plaintiffs, on behalf of themselves and the class of similar situated persons they seek to represent, claim of defendant, Cavan, a sum in excess of $5,000,000.00 in damages, exclusive of interest, costs, damages for delay, punitive damages and attorney's fees and brings this action to recover the same.

## COUNT III–NEGLIGENCE

### NAMED PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE CLASS V. BOZUTTO CORPORATION

77.     Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

78.     At all times relevant herein defendant, Bozzuto, was responsible for the property management of the Riverwalk at Millennium Apartment Complex.

79.     In connection with the management of the Riverwalk project, defendant, Bozutto, had a duty to the residents of the complex to ensure that the fire protection, containment and suppression systems within the complex were adequate.

80.     Defendant, Bozutto, knew or should have known of deficiencies in the fire prevention, containment and/or suppression systems within the Riverwalk complex.

81.     Defendant, Bozutto, by and through its agents, servants, workmen, and/or employees was careless and negligent in:

        a.     Failing to provide fire-stopping throughout the building and the roof structure as required by applicable codes, standards and regulations;

        b.     Failing to construct firewalls which would form a continuous fire and smoke barrier between potential fire areas from foundation to or through the roof;

        c.     Failing to construct the Property in a manner which would prevent the passage of flame, smoke, fumes and hot gasses from the initial area of fire origin;

        d.     Failing to fire-stop and/or fill with noncombustible material concealed spaces to prevent the passage of flame, smoke, fumes and hot gasses;

        e.     Failing to use proper fire-stopping materials;

        f.     Failing to adequately, properly and safely inspect, administer, conduct, oversee, subcontract, supervise, plan, perform and manage the construction of the Property;

24

g.      Failing to act with due and reasonable care under the circumstances so as to preserve the Property from harm;

h.      Failing to properly hire, train and supervise their agents, servants, workmen subcontractors and/or employees;

i.      Failing to utilize that degree of care that reasonable and prudent persons would have utilized in carrying out the type of work performed by the Defendants;

j.      Failing to follow the applicable standards for the installation of sprinkler systems within the Property;

k.      Constructing the Property in violation of the applicable standards for the installation of sprinkler systems within the Property;

l.      Failing to provide sprinkler heads in non-livable areas of the Property, including but no limited to the attic, as required by the applicable standards for the installation of sprinkler systems; and

m.      Failing to consider the flow of water which would be available to fight a foreseeable fire;

n.      Failing to have an adequate water supply to fight a foreseeable fire in a timely and effective manner;

o.      Failing to consider how low water pressure would effect the ability of firefighters to control a foreseeable fire; and

p.      Failing to warn the residents of the Riverwalk of the deficiencies in the fire containment and suppression systems at the property.

82.     By reason of the carelessness and negligent of the Defendants, as aforesaid, named Plaintiffs, and the members of the Class, suffered damage to their personal property and incurred significant expense and damages as set forth in the preceding paragraphs.

WHEREFORE, named plaintiffs, on behalf of themselves and the class of similar situated persons they seek to represent, claim of defendant, Bozutto, a sum in excess of $5,000,000.00 in damages, exclusive of interest, costs, damages for delay, punitive damages and attorney's fees and brings this action to recover the same.

25

## COUNT IV

## NEGLIGENCE PER SE

## NAMED PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE CLASS V. ALL DEFENDANTS

83.     The averments set forth in the above paragraphs are incorporated herein by reference as if fully set forth herein.

84.     The defendants, by the above-described acts and omissions as more fully set forth above, violated the standards of conduct imposed upon them by state and local legislative and administrative enactments such as these identified hereinabove.  In so violating these laws, defendants are negligent *per se*.  The purpose of these laws is to protect the interests of plaintiffs and members of the Class.

85.     Defendants have violated their statutorily mandated duty to know of and strictly adhere to the legislative and administrative enactments governing their conduct in their operations at the Stables project and the Riverwalk at Millennium.  These statutes and regulations clearly applied to the conduct of the Defendants.  In so violating these laws, defendants are negligent *per se*.

86.     The damage caused by the fire at the Stables project was directly and proximately caused and allowed to spread quicker and further to and throughout the Riverwalk at Millennium by defendants' gross negligence in violating the standards of conduct defined by these legislative and administrative enactments, and as a direct and proximate result of these violations; plaintiffs and the Class have suffered and continue to suffer substantial property loss expenses, and other damages.

26

87.     As set forth above, defendants acted intentionally, with wanton and reckless disregard for the consequences of their conduct, maliciously, egregiously and/or oppressively for which plaintiffs and the Class are entitled to damages.

WHEREFORE, named plaintiffs, on behalf of themselves and the class of similar situated persons they seek to represent, claim of defendants, O'Neill, Merion, L21, Cavan and Bozutto, a sum in excess of $5,000,000.00 in damages, exclusive of interest, costs, damages for delay, punitive damages and attorney's fees and brings this action to recover the same.

## COUNT V

## PRIVATE NUISANCE

## NAMED PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE CLASS V. ALL DEFENDANTS

88.     The averments set forth in the above paragraphs are incorporated herein by reference as if fully set forth herein.

89.     Defendants unreasonably interfered with the use and enjoyment of the property of plaintiffs and the members of the Class, including, but not limited to, barring substantial access thereto, as well as causing damage thereto from fire, smoke, airborne toxins, water, embers and other debris, and the threat of other physical damage, and, by its misconduct caused the resultant damages.

90.     Defendants' interference with plaintiffs' use and occupancy of real property:

     a.     evidenced a wanton and reckless disregard for their property rights;

     b.     was negligent in that it involved an unreasonably great risk of causing damage to property of plaintiffs and the Class; and

     c.     was also the direct result of defendants' intentional conduct and the gross negligence, wanton, reckless and willful conduct of defendants.

27

91.     Additionally, plaintiffs and the members of the Class that they represent all suffered the economic losses identified above as a direct and proximate result of the physical damages also so identified.

92.     As a direct and proximate result of defendants causing a private nuisance, plaintiffs and the members of the Class have suffered an economic losses and loss of enjoyment of their real and personal property.

93.     As a direct and proximate result of the foregoing trespass and private nuisance, plaintiffs and the members of the Class have suffered and continue to suffer substantial property damage/loss and economic harm.

94.     As set forth above, defendants acted intentionally, with wanton and reckless disregard for the consequences of its conduct, maliciously, egregiously and/or oppressively for which plaintiffs and the Class are entitled to damages.

WHEREFORE, named plaintiffs, on behalf of themselves and the class of similar situated persons they seek to represent, claim of defendants, O'Neill, Merion, L21, Cavan and Bozutto, a sum in excess of $5,000,000.00 in damages, exclusive of interest, costs, damages for delay, punitive damages and attorney's fees and brings this action to recover the same.

## COUNT VI

## PUBLIC NUISANCE

### NAMED PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE CLASS V. ALL DEFENDANTS

95.     The averments set forth in the above paragraphs are incorporated herein by reference as if fully set forth herein.

96.     Defendants' actions, failure to act and conduct, as described above, resulted in an unreasonable and significant interference with the right of the general public, which includes

28

plaintiffs and the member of the Class, to use and traverse the public streets with safety and convenience, thereby giving rise to a continuing public nuisance with a long-lasting effect.

97.     Defendants knew, or should have known, that their actions, failure to act, and conduct, as described above, would result in an unreasonable and significant interference with the right of the general public, including plaintiffs and the members of the Class, to use and traverse the public streets with safety and convenience, and occupy their apartments, thereby giving rise to a continuing public nuisance with a long-lasting effect.

98.     Plaintiffs and the members of the Class depend upon having reasonable, safe and convenient access to their premises.

99.     The destruction of plaintiffs and members of the class' apartments and closing of the Riverwalk at Millennium, obstruction and re-routing of the streets, substantially deprives the plaintiffs and the members of the Class of reasonable, safe, and convenient access by themselves and/or others to their premises.

100.    In addition to the above-described interference of the rights of the general public to use and traverse the public streets and occupy their apartments and businesses, the actions of defendants caused a substantial lack of access for plaintiffs, the members of the Class, and their invitees to the facilities, leased by plaintiffs and the members of the Class within the Riverwalk at Millennium Complex.

101.    This substantial deprivation to access, and the resulting closures and/or other disruption of their lives, has caused the plaintiffs and the members of the Class to incur costs and expenses as set forth above and/or a loss of use and enjoyment of real and/or personal property, all for a significant period of time.

102.    Defendants' significant and unreasonable interference with the rights of the plaintiffs and the members of the Class, rights common to the general public, created a public nuisance, as described above, under applicable state common law principles and caused plaintiffs and the Class members to suffer a substantial lack of access to their apartments and property, and a special and distinct harm, different from that suffered by other members of the public.

103.    In sum, plaintiffs and the members of the Class have been harmed as a direct result of the spread of the fire, the subsequent closing of portions of the Riverwalk at Millennium and adjacent streets, in addition to the harm suffered by the general public, in that:

    a.    plaintiffs and the Class members have been substantially deprived of the right of reasonable, safe and convenient access for themselves and others to their premises and property;

    b.    plaintiffs and the Class members have suffered pecuniary loss.

    c.    plaintiffs and the Class members have suffered substantial loss of use, enjoyment and value of real and/or personal property.

104.    The above-listed harms which plaintiffs and the Class members have suffered as a direct result of the fire and the closing of the Riverwalk at Millennium and adjacent streets are a different kind of harm from that suffered by other members of the public.

105.    Additionally, plaintiffs and the Class that they represent all suffered economic losses identified above as a direct and proximate result of substantial acts as being denied as identified above.

106.    The actions and conduct of the defendants, as set forth above, were done outrageously, maliciously, or with a reckless indifference to the interests of others.

107.    As set forth above, defendants acted intentionally, with wanton and reckless disregard for the consequences of their conduct, maliciously, egregiously and/or oppressively for which plaintiffs and the Class are entitled to damages.

WHEREFORE, named plaintiffs, on behalf of themselves and the class of similar situated persons they seek to represent, claim of defendants, O'Neill, Merion, L21, Cavan and Bozutto, a sum in excess of $5,000,000.00 in damages, exclusive of interest, costs, damages for delay, punitive damages and attorney's fees and brings this action to recover the same.

## COUNT VII

## PUNITIVE DAMAGES

### NAMED PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE CLASS V. ALL DEFENDANTS

108.    The averments set forth in the above paragraphs are incorporated by reference as if fully set forth herein.

109.    The fire, which began at the Stables project on August 13, 2008, and spread to and throughout the Riverwalk at Millennium raged uncontrollably for hours because of the gross violations of standards of care, as identified above, and because even the most basic fire detection, control and suppression systems were not implemented at the Stables project or Riverwalk at Millennium and the fire suppression systems which existed failed shortly after the fire ignited.

110.    The fire could have been contained much more effectively and expeditiously if not for the gross violations of the standard of care, if not for the lack of proper building materials and standards, fire detection, alarm, control and suppression systems, and the lack of proper maintenance to the existing systems, and if not for the other Defective Conditions created by the defendants.

111.    Defendants, as owners, could and should have demanded and insured, to a minimum of cost and effort, that those responsible for designing, installing, constructing, maintaining, managing and inspecting existing building materials and standards, as well as fire

31

detection, alarm, control and suppression systems, adhered to reasonable standards of conduct; but defendants instead chose to concentrate their efforts on generating profits from their tenants and future tenants, and disregarding the safety and well-being of their tenants, their invitees, and the public that has occasion to be in or near the Stables project and Riverwalk at Millennium by tolerating sub-standard materials, standards, systems and services from those hired to design, construct, install, maintain, manage, repair and inspect same.

112.    Through their actions and omissions from their above-described conduct, defendants' reckless and wanton disregard for the safety, well-being and livelihood of the Riverwalk at Millennium occupants and tenants, their invitees, individuals in the neighboring residences and buildings, and the public that has had occasion to be in or near the Riverwalk at Millennium, was outrageous.

113.    The fire which started at Stables project and spread or jumped to the Riverwalk at Millennium was directly and proximately caused by, and/or contributed to, as well as being a reasonably foreseeable result of, the intentional acts of defendants which chose to elevate their desire for additional profit over the need to protect the safety, lives, well-being, livelihood and property of the occupants and tenants, their invitees, individuals in neighboring residences and buildings, and the public that has occasion to be in the Riverwalk at Millennium or surrounding area.

114.    Throughout the borough of Conshohocken, Montgomery County, the Commonwealth of Pennsylvania, and the county, there are multi-million dollar enterprises such as the Stables project and Riverwalk at Millennium Apartment Complex which must not be permitted to sacrifice the lives, well-being, livelihood and valuable property of individuals for the sake of a few more dollars in profit, especially, where, as here, the huge costs in property and

32

personal interruption could have been readily avoided through the known and easily affordable means of constructing and maintaining the Stables project and Riverwalk at Millennium so that they had a steal frame instead of wood frame, vertical separation walls known as parapets, sealed off fire wall without penetrations and operational sprinkler systems, and properly maintaining the existing construction materials, fire detection, alarm, control and suppression systems.

WHEREFORE, named plaintiffs, on behalf of themselves and the class of similar situated persons they seek to represent, claim of defendants, O'Neill, Merion, L21, Cavan and Bozutto, a sum in excess of $5,000,000.00 in damages, exclusive of interest, costs, damages for delay, punitive damages and attorney's fees and brings this action to recover the same.

## JURY TRIAL DEMANDED

Plaintiffs and the Class demand a trial by jury of all issues so triable.

LEVIN, FISHBEIN, SEDRAN & BERMAN

Date: 8|29|08

/s/ CES2481
Arnold Levin, Esquire (Att. I.D. No. 02280)
Charles Schaffer, Esquire (Att. I.D. No. 76259)
Daniel Levin, Esquire (Att. I.D. No. 80013)
510 Walnut Street, Ste. 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

SILVERMAN & FODERA P.C.
Louis T. Silverman, Esquire (Att. I.D. No. 51504)
Leonard V. Fodera, Esquire (Att. I.D. No. 57203)
1835 Market Street, Ste. 2600
Philadelphia, PA 19103
Telephone: (215) 561-2100
Facsimile: (215) 561-0190

SEEGER WEISS LLP
Jonathan Shub, Esquire (Att. I.D. No. 53965)
TerriAnne Benedetto, Esquire (Att. I.D. No. 59378)
1515 Market Street, Ste. 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029

CHIMICLES & TIKELLIS LLP
Joseph G. Sauder, Esquire (PA. I.D. No. 82467)
Benjamin F. Johns, Esquire (PA. I.D. No. 201373)
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

LAW OFFICES OF CHRISTOPHER G. HAYES
Christopher G. Hayes, Esquire (PA I.D. No. 57253)
225 South Church Street
West Chester, PA 19382
Telephone: (610) 431-9505
Facsimile:  (610) 431-1269

*Attorneys for Plaintiffs*

# VERIFICATION

I, Dominic Antenucci, hereby state that I am the plaintiff in this action, and that the facts set forth in the foregoing Civil Action Complaint are true and correct to the best of my knowledge. I understand that this Verification is being made subject to 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorizations.

_27 AUG 2008_
Date

_Dominic Antenucci_
Dominic Antenucci

## **VERIFICATION**

I, Nicole Antenucci, hereby state that I am the plaintiff in this action, and that the facts set forth in the foregoing Civil Action Complaint are true and correct to the best of my knowledge. I understand that this Verification is being made subject to 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorizations.


_____8/29/08_____                    _____Nicole Antenucci_____
Date                                  Nicole Antenucci

## __VERIFICATION__

I, Lori Parker, hereby state that I am the plaintiff in this action, and that the facts set forth in the foregoing Civil Action Complaint are true and correct to the best of my knowledge. I understand that this Verification is being made subject to 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorizations.

8/28/08

Date

Lori Parker

## **VERIFICATION**

I, Clinton Shippen, hereby state that I am the plaintiff in this action, and that the facts set forth in the foregoing Civil Action Complaint are true and correct to the best of my knowledge.  I understand that this Verification is being made subject to 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorizations.

8/28/08
_____
Date

_____
Clinton Shippen